```
ZULIMA V. FARBER
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff Governor Jon Corzine
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

By:   James H. Martin
      Assistant Attorney General
      (609) 984-1933
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------x
HON. JON CORZINE, Governor of the   :
State of New Jersey,                :
                                    :
          Plaintiff,                :    Civil Action No.
                                    :
     v.                             :
                                    :
HON. JOHN SNOW, Secretary of the    :    VERIFIED COMPLAINT
Treasury; HON. CONDOLEEZZA RICE,    :
Secretary of State; HON. DONALD     :
RUMSFELD, Secretary of Defense;     :
HON. CARLOS GUTIERREZ, Secretary    :
of Commerce; HON. ALBERTO GONZALES, :
Attorney General of the United      :
States; HON. MICHAEL CHERTOFF,      :
Secretary of Homeland Security;     :
HON. JOSHUA B. BOLTEN, Director of  :
the Office of Management and        :
Budget; HON. ROB PORTMAN, United    :
States Trade Representative; HON.   :
STEPHEN J. HADLEY, Assistant to     :
the President for National          :
Security Affairs; HON. ALLAN        :
HUBBARD; Assistant to the           :
President for Economic Policy;      :
HON. JOHN MARBURGER, Director of    :
the Office of Science and           :
Technology Policy; COMMITTEE ON     :
FOREIGN INVESTMENTS IN THE UNITED   :
STATES,                             :
                                    :
          Defendants.               :
------------------------------------x

Plaintiff, Hon. Jon Corzine, Governor of the State of New Jersey, hereby alleges as follows:

### PARTIES

1. Plaintiff Hon. Jon Corzine is the Governor of the State of New Jersey and is responsible for the protection of the health and safety of the people of New Jersey and those who work in and travel through the State. He brings this suit in furtherance of his duty to address a potential threat to the safety and well-being of millions of New Jersey residents and visitors who live, work and travel in the areas closely adjacent to New Jersey's port facilities, as well as the security of those port facilities.

2. Defendant Hon. John Snow is the United States Secretary of the Treasury, and a member and chairman of the Committee on Foreign Investments in the United States ("CFIUS"). He is sued in his official capacity.

3. Defendant Hon. Condoleezza Rice is the United States Secretary of State and a member of CFIUS. She is sued in her official capacity.

4. Defendant Hon. Donald Rumsfeld is the United States Secretary of Defense and a member of CFIUS. He is sued in his official capacity.

5. Defendant Hon. Carlos Gutierrez is the United States Secretary of Commerce and a member of CFIUS. He is sued in his official capacity.

6. Defendant Hon. Alberto Gonzales is the Attorney General of the United States and a member of CFIUS. He is sued in his official capacity.

7. Defendant Hon. Michael Chertoff is the United States Secretary of Homeland Security ("DHS") and a member of CFIUS. He is sued in his official capacity.

8. Defendant Hon. Joshua B. Bolten is the Director of the Office of Management and Budget for the Executive Office of the President of the United States and a member of CFIUS. He is sued in his official capacity.

9. Defendant Hon. Rob Portman is the United States Trade Representative and a member of CFIUS. He is sued in his official capacity.

10. Defendant Hon. Stephen J. Hadley is the Assistant to the President of the United States for National Security Affairs and a member of CFIUS. He is sued in his official capacity.

11. Defendant Hon. Allan Hubbard is the Assistant to the President of the United States for Economic Policy and a member of CFIUS. He is sued in his official capacity.

12. Defendant Hon. John Marburger is the Director of the Office of Science and Technology Policy for the Executive Office of the President of the United States and a member of CFIUS. He is sued in his official capacity.

13. Defendant Committee on Foreign Investments in the United States ("CFIUS"), an inter-agency committee chaired by the Secretary of the Treasury, was established by Executive Order 11858 to monitor and evaluate the impact of foreign investment in the United States. In 1988, the President, pursuant to Executive Order 12661, delegated to CFIUS his responsibilities under 50 U.S.C. App. §2170.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action because the claims arise under the Constitution and laws of the United States. 28 U.S.C. §1331.

15. Venue is properly laid in this District because a substantial portion of the events giving rise to the claims asserted in this Complaint arose in New Jersey. 28 U.S.C. §1391(b).

## FACTS

### PORT NEWARK

16. New Jersey is the most densely populated State in the nation. Port Newark is located in or adjacent to the three most densely populated counties in New Jersey, Essex, Union and Hudson Counties.

17. Port Newark is one of the largest ports in the nation. More than 3 million units of containerized cargo move through the Port annually.

18. The area where Port Newark is located is the focal point of much of the transportation infrastructure in the region. CSX, Conrail, Norfolk Southern, Canadian Pacific and several short lines provide freight rail service in and around Port Newark. Amtrak and New Jersey Transit, the third largest public transportation provider in the country, provide rail passenger service on tracks and at stations adjacent to Port Newark.

19. The New Jersey Turnpike, Interstate 78, State Highways 1&9, 21, and 22, are adjacent to Port Newark, as is Newark Liberty International Airport which provides air transportation for millions of passengers each year from around the world, as well as for freight.

20. Port Newark is located close to the Goethals Bridge, the Bayonne Bridge, the Newark Bay Bridge, the Verrazzano Narrows Bridge, and the Holland and Lincoln Tunnels. These facilities are critical components of the region's transportation network.

21. The Port Newark area is the site of major petrochemical refining, storage and transportation facilities, natural gas transportation facilities, power generation facilities and telecommunications services facilities.

22. From Port Newark, containers are loaded onto commercial vehicles and railways for destinations throughout the United States.

23. A breach of security at Port Newark poses a threat to the people of New Jersey, and all those who live, work, and travel in the State, as well as the critical facilities located near Port Newark.

24. A breach of security at Port Newark could result in allowing a weapon of mass destruction to be transported from Port Newark onto the roads and railways of New Jersey, to destination points throughout the United States.

## THE PROPOSED ACQUISITION

25. Upon information and belief, on or about November 2005, Dubai Ports World ("Dubai"), through Thunder FZE ("Thunder"), made an offer to acquire Peninsular and Oriental Steam Navigation ("P&O"), a corporation formed under the laws of the United Kingdom which is engaged in shipping and logistics operations at Port Newark, New Jersey. A subsidiary of P&O is a partner in a limited liability company that leases a container port at Port Newark.

26. Upon information and belief, in or about February 2006, the shareholders of P&O approved the acquisition.

27. Upon information and belief, the acquisition will be completed on or about March 2, 2006, after being confirmed by the High Court of Justice of England and Wales.

28. Upon information and belief, Dubai and Thunder are wholly-owned subsidiaries of Ports Containers and Free Zone

Corporation, which is controlled by the government of the Arab Emirate of Dubai.

29. Upon information and belief, Dubai and Thunder are entities over which control is exercised or exercisable by the government of the United Arab Emirate of Dubai, a member of the United Arab Emirates federation.

### THE UNITED ARAB EMIRATES

30. According to the National Commission on Terrorist Attacks upon the United States, Monograph on Terrorist Financing, Staff Report to the Commission (the "Monograph on Terrorist Financing"), the vast majority of money funding the September 11, 2001 attacks flowed through the United Arab Emirates.

31. According to the Monograph on Terrorist Financing, the United Arab Emirates was "ambivalent and selectively cooperative" in assisting the United States in its efforts to stop the flow of money to Al Qaeda entities.

32. Upon information and belief, the United Arab Emirates is one of only three nations that recognized the Taliban as Afghanistan's legitimate government.

33. Upon information and belief, the United Arab Emirates was the home to Marwan al-Shehhi, a September 11th hijacker.

34. Upon information and belief, the United Arab Emirates' banking system has been used by groups affiliated with Al Qaeda.

35. Upon information and belief, a covert group, headed by the father of Pakistan's nuclear program, Adbul Qadeer Khan, with the help of a Dubai company, supplied Pakistan nuclear technology to Iran, Libya and North Korea, countries identified by the United States as state sponsors of terrorism.

## THE EXON-FLORIO AMENDMENTS

36. 50 U.S.C. App. §2170 authorizes the President of the United States to review proposed transactions involving the merger, acquisition, or takeover by an entity owned or controlled by a foreign government of an entity engaged in interstate commerce in the United States. That statute authorizes the President to suspend or prohibit any such transaction when, in the President's view, the foreign government intending to exercise control over an entity engaged in interstate commerce in the United States might take action that threatens to impair the national security.

37. In 1988, pursuant to Executive Order 12661, the President of the United States delegated his authority under 50 U.S.C. App. §2170 to CFIUS.

38. Pursuant to 31 C.F.R. §800.401, any party to a transaction subject to 50 U.S.C. App. §2170 may send a voluntary notice to the CFIUS of the intended transaction.

39. Pursuant to 31 C.F.R. §800.402, any voluntary notice submitted to CFIUS must contain information regarding the "essentials of the transaction," including the extent of control a foreign government exercises over the company submitting the notice.

### CFIUS CONSIDERATION OF DUBAI'S PURCHASE OF P&O

40. Upon information and belief, in late 2005 or early 2006, Dubai sent a voluntary notice to CFIUS that the company planned to purchase P&O, which would give Dubai control of shipping operations at a portion of Port Newark.

41. Upon information and belief, Dubai's offer to purchase P&O is conditioned on completion of the CFIUS review process.

42. Upon information and belief, CFIUS reviewed the documents and information Dubai submitted in conjunction with the company's voluntary notice.

43. Upon information and belief, DHS identified security concerns arising from the proposal to allow Dubai to gain control of shipping operations at Port Newark and other locations.

44. Upon information and belief, officials from the DHS obtained safeguards and assurances from Dubai addressing the Department's security concerns.

45. Upon information and belief, based upon its review of the documents and information submitted by Dubai in conjunction

with the voluntary notice and the supplemental safeguards and assurances Dubai provided to one or more members of CFIUS, CFIUS determined not to undertake an investigation of Dubai's proposed purchase of P&O and resulting gain of control of a portion of Port Newark.

46. Upon information and belief, pursuant to 31 C.F.R. §800.502(b), CFIUS notified P&O and Dubai that an investigation of the transaction was not required. Pursuant to 31 C.F.R. §800.5023(a) a decision by CFIUS not to investigate a proposed transaction concludes action under 50 U.S.C. App. §2170.

### COUNT ONE

### SEEKING A WRIT OF MANDAMUS REQUIRING CFIUS TO FULFILL ITS STATUTORY OBLIGATION UNDER 50 U.S.C. APPENDIX §2170

47. The Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth at length herein.

48. 50 U.S.C. App. §2170(b) mandates that CFIUS undertake an investigation where "any entity controlled by or acting on behalf of a foreign government" seeks to engage in any acquisition that "could affect the national security of the United States."

49. CFIUS and its members failed to fulfill their statutory obligation to conduct an investigation of the proposed acquisition of P&O by Dubai, given the clear potential that the sale of P&O to Dubai, and the subsequent transfer of control of

portions of Port Newark, New Jersey to the government of the United Arab Emirate of Dubai, could affect the national security of the United States.

### COUNT TWO

### SEEKING DOCUMENTS AND INFORMATION WHICH WILL PERMIT PLAINTIFF TO FULFILL HIS CORE STATE FUNCTION TO ENSURE THE HEALTH AND SAFETY OF THE PEOPLE OF NEW JERSEY, AND THOSE WHO WORK IN, AND TRAVEL THROUGH THE STATE

50. The State of New Jersey and plaintiff Governor Corzine are responsible for protecting the health and safety of the people of New Jersey, and those individuals who work in and travel through the State, all of who could be impacted by a breach of security at the Port Newark.

51. The protection of public health and safety is an integral and traditional governmental function of the State of New Jersey executed by plaintiff Governor Corzine and his designees, including officials at the Office of Counter-Terrorism.

52. Under the Maritime Transportation Security Act of 2002, Congress recognized that United States ports may serve as a vector or target for terrorist attacks aimed at the United States. 46 U.S.C. §70101 note.

53. Under the National Response Plan adopted pursuant to Homeland Security Presidential Directive 5 ("NRP") (December 2004 at p6), primary responsibility for responding to the consequences of a terrorist attack or other incident of national significance

falls to the State, county and local resources of the State. ("The NRP is based on the planning assumptions and considerations presented in this section. Incidents are typically managed at the lowest possible geographic, organizational, and jurisdictional level.").

54. While the Coast Guard inspects security at the Seaport, the Maritime Transportation Security Act only requires the Coast Guard to inspect facilities once per year.

55. Pursuant to the Maritime Transportation Security Act of 2002, the owner and/or operator of a facility is the cornerstone of security. The owner/operator is required to develop a Facility Security Plan ("FSP") and designate an employee to serve as Facility Security Officer ("FSO"). The FSO is responsible for implementing the FSP, which includes responsibilities related to record keeping, surveillance, ensuring appropriate training and hiring practices, and conducting security inspections. The FSO is in a position to gain information regarding the port facility's entire operation as well as information regarding the security practices of other entities involved in port security.

56. To the extent the State lacks confidence in the FSO and his or her employer, the State's ability to fulfill its obligation to ensure adequate security at the Port Newark is impaired.

57. In order to plan for the response to and recovery from terrorist activity, and in order to detect and prevent acts of terrorism in areas where the State has principal responsibility, plaintiff Governor Corzine, and his designees, must have access to information needed to enable the Governor to protect and preserve the lives, health, and property of the people of New Jersey and those who work in and travel through the State.

58. In order to effectuate this responsibility, plaintiff Governor Corzine instructed the New Jersey Office of Counter-Terrorism to request from DHS and CFIUS the documents and information submitted to CFIUS by Dubai and any evidence of the safeguards and assurances regarding security concerns provided by Dubai to DHS or any member of CFIUS, or any mitigation agreement memorializing the safeguards and assurances.

59. Officials at New Jersey's Office of Counter-Terrorism have security clearance from the United States government to review confidential materials concerning national security.

60. Neither DHS nor CFIUS has provided all of the requested information.

61. Defendants' failure to provide New Jersey's Office of Counter-Terrorism with all of the documents and information relevant to the acquisition by Dubai, impairs plaintiff Governor Corzine's ability to execute New Jersey's traditional function of

protecting the health and safety of its people, and those individuals who work in or travel through the State.

62. Defendants' failure to provide New Jersey's Office of Counter-Terrorism with all of the documents and information relevant to the acquisition by Dubai, interferes with the residual and inviolable sovereign functions reserved to the State of New Jersey by the Tenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff Governor Corzine seeks an Order directing:

(a) CFIUS to perform the investigation of the proposed acquisition of P&O by Dubai Ports World that is required by 50 U.S.C. App. §2170(b);

(b) CFIUS to rescind its notification to Dubai and/or P&O that no investigation was required under 50 U.S.C. App. §2170(b) of the proposed acquisition of P&O by Dubai;

(c) CFIUS, upon completion of its investigation of the proposed acquisition of P&O by Dubai Ports World, to present to the President a report that includes the information mandated by 50 U.S.C. App. §2170(e)-(f) and 31 C.F.R. §800.504(b);

(d) defendants to provide to New Jersey's Office of Counter-Terrorism the documents and information provided to CFIUS by Dubai Ports World;

(e) defendants to provide to New Jersey's Office of Counter-Terrorism any other documents, letters, memoranda, electronic documents in the possession of CFIUS or any of its members relating to Dubai Ports World and/or its acquisition of P&O; and

(f) such other relief as this Court deems necessary and proper

> Respectfully submitted,
>
> ZULIMA V. FARBER
> ATTORNEY GENERAL OF NEW JERSEY
>
> By: _/s/ James H. Martin_____
> James H. Martin
> Assistant Attorney General

Dated:   Trenton, New Jersey
         February 23, 2006

**VERIFICATION**

State of New Jersey )
                    )
County of Mercer    )

On this 23rd day of February, 2006, James McElwain, New Jersey's Homeland Security Advisor, appeared before me. After I administered the oath to him, upon his oath he said that he read the Verified Complaint and that the facts stated in it are within his personal knowledge (except where expressly noted are upon information and belief) and are true and correct.

_____
James McElwain

Sworn and subscribed before
me this 23rd day of February, 2006

_____
John P. Bender
Attorney-At-Law
State of New Jersey